Harris v Vogler (2020 NY Slip Op 05999)





Harris v Vogler


2020 NY Slip Op 05999


Decided on October 22, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 22, 2020

530509

[*1]Shalyn S. Harris, Appellant,
v
Gregory A. Vogler et al., Respondents.

Calendar Date: September 16, 2020

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ.


Sobo & Sobo, LLP, Middletown (Mark Cambareri of counsel), for appellant.
Santacrose & Frary, Albany (Kyle A. Satchell of counsel), for respondents.



Reynolds Fitzgerald, J.
Appeal from an order of the Supreme Court (Cahill, J.), entered May 24, 2019 in Ulster County, which granted defendants' motion for summary judgment dismissing the complaint.
On June 2, 2016, as plaintiff was attempting to exit a parking lot, her vehicle was rear-ended by a vehicle driven by defendant Timothy J. Vogler and owned by his father, defendant Gregory A. Vogler. Plaintiff subsequently commenced this personal injury action alleging that she sustained serious and permanent injuries, as defined by Insurance Law § 5102, to her shoulders, lower back and neck. Following completion of discovery, defendants moved for summary judgment dismissing the complaint, claiming that plaintiff's injuries failed to meet the serious injury threshold. Supreme Court granted the motion, and plaintiff appeals.
"Under New York's no-fault system of automobile insurance, a person injured in a motor vehicle accident may only recover damages through a court action if he or she sustained a serious injury" (Roulhac v Hermance, 180 AD3d 1192, 1193 [2020] [internal quotation marks and citations omitted]). As germane here, Insurance Law § 5102 (d) defines "serious injury" as an injury that results in a "permanent consequential limitation of use of a body organ or member," in the "significant limitation of use of a body function or system" or is "a medically determined injury or impairment of a nonpermanent nature which prevents an injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than [90] days during the [180] days immediately following the occurrence."
Contrary to the assertion of Supreme Court, defendants, as the proponents of the underlying motion for summary judgment, "bore the initial burden of establishing, through competent medical evidence, that plaintiff did not sustain a serious injury caused by the accident" (Cohen v Bayer, 167 AD3d 1397, 1398 [2018]; see Clark v Basco, 83 AD3d 1136, 1137 [2011]). In support of their motion, defendants submitted the parties' deposition transcripts, plaintiff's medical reports and an independent medical examiner report from orthopedic surgeon Robert C. Hendler. Hendler's sworn report concludes that, although plaintiff may have sustained cervical and lumbosacral sprains due to the accident, she has no disability or permanent findings in her back or neck that are causally related to it, and that "she is able to work and participate in all activities of daily living without restrictions."
As to the 90/180-day category of serious injury, we note that Hendler, who examined plaintiff more than two years after the accident, failed to address plaintiff's condition or limitations within the first 180 days following the accident, which is necessary to foreclose the 90/180-day category (see Poole v State of New York, 121 AD3d 1224, 1225 [2014]; Colavito v Steyer, 65 AD3d 735, 736 [2009]). Defendants contend that Hendler's omission in this respect is cured by their submission of plaintiff's deposition and medical records. We disagree. In her deposition, plaintiff testified that on the date of the accident, she was employed in two different jobs — as a home health care aide and a medical transportation driver — and that, as a result of the accident, she was out of work for six weeks. It is unclear from her deposition when she returned to work, although it is clear that when she returned, her hours were significantly reduced. She further testified that, for the six-month period following the accident, she needed help caring for her household in terms of cooking, laundry and activities with her children as a result of her injuries.
Additionally, plaintiff's medical records do not provide the requisite showing for defendants to carry their initial burden with respect to this category. Although defendants may properly rely on the unsworn medical records of plaintiff to support their motion (see Raucci v Hester, 119 AD3d 1044, 1044 [2014]), the records must be "sufficiently complete and, combined with other proof, demonstrate that the plaintiff did not suffer a serious injury" (McElroy v Sivasubramaniam, 305 AD2d 944, 945 [2003] [internal quotation marks and citation omitted]). Even though defendants point to plaintiff's chiropractic summaries, which regularly include "patient is currently working" under the heading "Work/Disability Status," other records include a postaccident MRI indicating that plaintiff has herniated discs at C5-6 and L4-5, and there are records of her treating physician indicating significant restrictions on plaintiff's range of motion. Simply put, plaintiff's records are far too inconsistent to prove that defendants are entitled to judgment as a matter of law on the issue of serious injury under the 90/180-day category. Thus, we find that defendants failed to meet their burden as to this category (Cohen v Bayer, 167 AD3d at 1402). Even if defendants met their burden on this category, plaintiff's testimony "raises triable issues of fact whether [s]he had been curtailed from performing [her] usual activities to a great extent during the statutory period" (Durante v Hogan, 137 AD3d 1677, 1678 [2016] [internal quotation marks and citation omitted]).
As to the two other statutory categories, significant limitation of use and permanent consequential limitation of use, "whether a limitation of use or function is significant or consequential . . . relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part" (Shea v Ives, 137 AD3d 1404, 1405 [2016] [internal quotation marks, brackets and citations omitted]). Upon a review of plaintiff's medical records and a physical examination on June 20, 2018, Hendler opined that, due to the accident, plaintiff "may have sustained cervical and lumbosacral sprains, with possible temporary exacerbation of a pre-existing lower back condition." As for a preexisting back condition, Hendler observed that plaintiff's medical file showed that she sustained "an acute lower back injury" at work in December 2014. Hendler found "evidence of degenerative joint disease and degenerative disc disease in both the neck and back areas." Upon examination, Hendler determined that plaintiff had full range of motion in her cervical spine and lumbar spine. He concluded that plaintiff had no disability and could work without limitation. This proof satisfied defendants' initial burden of establishing that plaintiff did not sustain a serious injury to her back or neck in either the significant limitation of use or permanent consequential limitation of use categories (see Gaddy v Eyler, 79 NY2d 955, 957 [1992]; Fillette v Lundberg, 150 AD3d 1574, 1576-1577 [2017]; Shea v Ives, 137 AD3d at 1405).
In opposition, plaintiff submitted a January 2018 affirmed letter report of one of her treating physicians, Steven K. Jacobs. Jacobs opined that the herniated disc at the C5-6 level was caused by the accident. He differentiated the condition from a preexisting degenerative disease and explained that "[i]t is this soft disc herniation that led to [plaintiff] becoming symptomatic with persistent neck pain." On the other hand, he characterized the August 2016 MRI of the lumbar spine as "unremarkable." To avoid worsening of the C5-6 disc, Jacobs recommended a permanent limitation that plaintiff not lift "anything over 30 pounds or bend or stoop excessively." In addition, the medical evidence reveals substantial limitations of cervical range of motion remaining several months following the collision, and a "foraminal compression test was positive bilaterally." Plaintiff underwent a series of epidural injections from mid-September 2016 through mid-October 2016 without any relief of her neck pain, and she "continues to have weakness in the upper extremities." This evidence, viewed in a light most favorable to plaintiff as the nonmoving party, raised a triable issue of fact as to whether plaintiff's neck injury constitutes a serious injury under the significant limitation of use and permanent consequential limitation of use categories (see Toure v Avis Rent A Car Sys., 98 NY2d 345, 351-353 [2002]; Fillette v Lundberg, 150 AD3d at 1577-1578). As such, defendants' motion should also have been denied as to these two categories.
Garry, P.J., Egan Jr., Lynch and Mulvey, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, and motion denied.